## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LAWRENCE D. BAKER, SR.,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:16-cv-1142

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Lawrence D. Baker, Sr. brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance benefits ("DIB") and

supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of

errors (Doc. 7) and the Commissioner's response in opposition (Doc. 10).

## I. Procedural Background

Plaintiff filed his applications for DIB and SSI in July 2013, alleging disability since June

7, 2013 due to a combination of physical and mental impairments. These applications were

denied initially and upon reconsideration. Plaintiff, through counsel, requested and was afforded

a hearing before administrative law judge ("ALJ") Thuy-Anh T. Nguyen on November 13, 2015.

Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On February

3, 2016, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's

request for review by the Appeals Council was denied, making the decision of the ALJ the final

administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

2

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2018.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since June 7, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease; hypertension; hyperlipidemia; cardiovascular disease including atrial fibrillation; chronic heart failure; obesity; depressive/bipolar disorder; attention-deficit hyperactivity disorder (ADHD); and rule out borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)[1].
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb steps, stairs, ladders, ropes, and scaffolds; frequently balance, kneel, and crouch; and occasionally stoop and crawl. He should avoid concentrated exposure to unprotected heights and heavy machinery. The [plaintiff] is able to understand, remember, and carry out concrete simple 1-2 step routine tasks/instructions, but should have no constant pace or high production standards. He is limited to occasional and simple changes in duties or in a work setting and should have no interaction with the general public. The [plaintiff] is limited to brief, occasional, and superficial interaction with coworkers or supervisors on shared tasks.

---

[1] The ALJ determined that the following conditions were non-severe: diabetes mellitus; migraines; hypothyroidism; ganglion cyst in the wrist; bursitis and tendinopathy in elbow; and otitis media. (Tr. 15).

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . .1962 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 7, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-26).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

---

[2] Plaintiff has past relevant work as a crane operator, welder, heavy equipment operator, material handler, and construction laborer. (Tr. 24).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative occupations such as inspector (1,400 jobs locally and 150,000 jobs nationally); marker (5,000 jobs locally and 270,000 jobs nationally; and routing clerk (1,700 jobs locally and 68,000 jobs nationally). (Tr. 25, 62).

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that the ALJ (1) failed to properly weigh the medical opinion evidence and (2) failed to properly evaluate his credibility.

#### 1. First assignment of error: Weight to plaintiff's treating physician and psychologist

Plaintiff alleges as his first assignment of error that the ALJ erred by failing to properly weigh the medical opinion evidence of record, including the opinions of his treating physician Dr. Catherine LaRuffa and his treating psychologist Mr. Paul Skogstrom. (Doc. 7 at 11-12). It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,

5

529-30 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The

medical opinions and diagnoses of treating physicians are generally accorded substantial

deference, and if the opinions are uncontradicted, complete deference."). "The treating physician

doctrine is based on the assumption that a medical professional who has dealt with a claimant

and his maladies over a long period of time will have a deeper insight into the medical condition

of the claimant than will a person who has examined a claimant but once, or who has only seen

the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met:

(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the]

case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20

C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ

declines to give a treating source's opinion controlling weight, the ALJ must balance the factors

set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to

give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include

the length, nature and extent of the treatment relationship and the frequency of examination. 20

C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ

must consider the medical specialty of the source, how well-supported by evidence the opinion

is, how consistent the opinion is with the record as a whole, and other factors which tend to

support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*,

710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

give good reasons in [the] notice of determination or decision for the weight [given a] treating

source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937. This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

### a. Medical evidence of record

#### i. Dr. LaRuffa treatment records

Plaintiff visited Dr. LaRuffa, M.D., family practice physician, on January 11, 2013 for problems of unspecified hypothyroidism, unspecified hyperlipidemia, bipolar I disorder, single manic episode, and attention deficit disorder. (Tr. 304-05). On examination, plaintiff had normal mood and affect and was active and alert. (Tr. 306). Plaintiff had normal heart auscultation and pulses throughout. (*Id.*). Plaintiff ambulated normally. (*Id.*). Plaintiff visited Dr. LaRuffa again for a follow-up examination on February 12, 2013 and the findings remained unchanged from the January 11, 2013 visit. (Tr. 302-03). On March 13, 2013, plaintiff visited Dr. LaRuffa again for a follow-up on his complaints of anxiety and attention deficit disorder. (Tr. 300). Plaintiff also reported throwing out his back while shoveling snow. (Tr. 301). On examination, plaintiff was not in distress and had a normal mood and affect. (*Id.*). Plaintiff had normal heart auscultation and pulses were normal throughout. Plaintiff had positive straight leg raises to the left and a tender sacroiliac joint. (*Id.*). Dr. LaRuffa assessed attention deficit disorder, without mention of hyperactivity, anxiety, lumbago, and other and unspecified

hyperlipidemia. (Tr. 301-02). Dr. LaRuffa recommended that plaintiff's lipids be rechecked in addition to a blood test three months later and a follow-up appointment in July 2013. (Tr. 302).

On June 5, 2013, plaintiff visited Dr. LaRuffa for low back pain radiating into the left great toe. (Tr. 298). Examination revealed perivertebral thoracolumbar spasms. (Tr. 299). Dr. LaRuffa assessed lumbago and attention deficit disorder, without mention of hyperactivity. (*Id.*). Dr. LaRuffa prescribed medication for plaintiff's conditions and ordered an x-ray of the thoracolumbar spine. (*Id.*). The x-ray, conducted on June 10, 2013, revealed no acute process in the thoracic and lumbar regions, but multilevel thoracic and lumbosacral junction spondylosis. (Tr. 310). On June 27, 2013, plaintiff returned to Dr. LaRuffa for a follow-up visit. On examination, plaintiff had spasms and tenderness on palpation in the lumbar/lumbosacral spine and reduced range of motion. (Tr. 296). Dr. LaRuffa assessed lumbago, spondylosis and allied disorders, and displacement of the thoracic or lumbar intervertebral disc. (*Id.*). Dr. LaRuffa recommended a follow-up appointment and prescribed more medications. (*Id.*).

On July 26, 2013, plaintiff visited Dr. LaRuffa again with complaints of bilateral back pain. (Tr. 415). On examination, plaintiff had an irregular gait and decreased sensation in the left foot and great toe. (Tr. 417). Plaintiff was in mild distress and had limited ambulation. (*Id.*). Dr. LaRuffa assessed spondylosis and allied disorders, displacement of the thoracic and lumbar intervertebral disc, and lumbago. (*Id.*). Dr. LaRuffa recommended home exercises and massage therapy, and she prescribed anxiety medication. (*Id.*). On August 23, 2013, plaintiff visited Dr. LaRuffa for a follow-up examination. (Tr. 412). On examination, plaintiff was in mild distress and had left perivertebral spasms. (Tr. 414). Dr. LaRuffa assessed spondylosis and allied disorders, lumbago, unspecified hypothyroidism, and attention deficit disorder, without mention of hyperactivity. (*Id.*).

On July 16, 2014, plaintiff returned to Dr. LaRuffa complaining of left arm pain and elbow swelling. (Tr. 482). On examination, plaintiff ambulated normally, exhibited no levels of distress, and had tender boggy olecranon bursa of the left elbow. (Tr. 484). Dr. LaRuffa assessed olecranon bursitis and hypertensive disorder. (*Id.*). She referred plaintiff to an orthopedic doctor and prescribed additional medications. (*Id.*). Plaintiff returned to Dr. LaRuffa on July 23, 2014 for a follow-up visit. (Tr. 479). Examination findings remained unchanged and Dr. LaRuffa assessed olecranon bursitis, hypertensive disorder, low back pain, and undifferentiated attention deficit disorder. (Tr. 481).

On August 13, 2014, plaintiff returned to Dr. LaRuffa for a follow-up visit. (Tr. 476). On examination, plaintiff exhibited no distress. (Tr. 478). Plaintiff had limited ambulation and perivertebral spasms of the lumbosacral spine. (*Id.*). Dr. LaRuffa assessed spondylosis and allied disorders, hypertensive disorder, low back pain, and undifferentiated attention deficit disorder. (*Id.*). Plaintiff visited Dr. LaRuffa again on October 9, 2014. (Tr. 473). On examination, plaintiff ambulated normally and showed no signs of distress. (Tr. 475). Dr. LaRuffa assessed acute bilateral otitis media and acute low back pain and prescribed Butrans patches for plaintiff's pain. (*Id.*).

Plaintiff returned to Dr. LaRuffa on October 23, 2014. (Tr. 546). On examination, plaintiff ambulated normally and showed no signs of distress, but had perivertebral spasms in his back and decreased range of motion. (Tr. 548). Dr. LaRuffa assessed hyperlipidemia, hyperthyroidism, and degeneration of the lumbar intervertebral disc. (Tr. 548-49). On November 4, 2014, plaintiff visited Dr. LaRuffa complaining of left knee pain and swelling with no known injury. (Tr. 542). On examination, plaintiff exhibited mild distress and limited ambulation. He had left knee tenderness, crepitance, and positive Lachman's test. (Tr. 545).

Dr. LaRuffa assessed strain of the knee. (*Id.*). She prescribed steroids to treat the inflammation in plaintiff's knee and referred him to an orthopedic doctor. (*Id.*).

On January 16, 2015, plaintiff visited Dr. LaRuffa for persistent low back pain. (Tr. 538-41). On examination, plaintiff had limited ambulation and perivertebral lumbosacral spasms. (Tr. 541). Dr. LaRuffa assessed degeneration of the lumbar intervertebral disc, low back pain, and migraine. (*Id.*). She ordered an MRI of the lumbosacral spine, noting that plaintiff had left leg radiculopathy and his x-rays had been abnormal. (*Id.*). An MRI taken on January 22, 2015 revealed mild degenerative change at L4-L5, mild disc bulging without central canal stenosis at L2-L3 and L3-L4, mild disc bulging at L4-L5 with hypertrophic facet arthritis, and mild disc bulging and hypertrophic facet changes at L5-S1. (Tr. 550). Plaintiff visited Dr. LaRuffa on February 13, 2015 to review the MRI findings. (Tr. 535). Examination findings remained unchanged since the January 2015 visit. (Tr. 537). Dr. LaRuffa assessed migraine, degeneration of the lumbar intervertebral disc, degeneration of the intervertebral disc with an unspecified site, and hypertensive disorder. (*Id.*). Dr. LaRuffa referred plaintiff for an epidural injection. (*Id.*).

Plaintiff visited Dr. LaRuffa again on April 14, 2015 for a follow-up visit for undifferentiated attention deficit disorder and reports that he struggled to concentrate with work. (Tr. 531-33). On examination, plaintiff had a normal mood and affect and was active and alert. (Tr. 533). Dr. LaRuffa assessed undifferentiated attention deficit disorder and hypothyroidism. (Tr. 534). Plaintiff visited Dr. LaRuffa again on May 12, 2015. (Tr. 528). Plaintiff reported that he "fe[lt] fine and [could] focus better since back on the Adderall." (Tr. 530). On examination, plaintiff had normal gait, and normal tone and strength in the musculoskeletal region. (*Id.*). Plaintiff exhibited no signs of distress and was able to ambulate normally. (*Id.*). Dr. LaRuffa assessed hypertensive disorder and attention deficit disorder. (Tr. 530-31). On June 30, 2015,

plaintiff returned to Dr. LaRuffa for another checkup visit. (Tr. 525). Examination revealed that

plaintiff ambulated normally. (Tr. 527). Plaintiff had spasms in the perivertebral lumbosacral

spine and decreased range of motion. (*Id.*). The examination also noted that plaintiff was

chronically ill. (*Id.*). Dr. LaRuffa assessed degeneration of the lumbar intervertebral disc and

adult ADHD. (*Id.*). She referred plaintiff to pain management. (*Id.*). Plaintiff visited Dr.

LaRuffa on September 1, 2015 for left wrist pain. (Tr. 565). Examination revealed limited

ambulation and left wrist 1.5 cm tender ganglion cyst. (Tr. 566). Dr. LaRuffa assessed

ganglion/synovial cyst and adult ADHD. (*Id.*).

On April 22, 2014, Dr. LaRuffa completed a multiple impairment questionnaire. (Tr.

461). Dr. LaRuffa listed plaintiff's diagnoses as degenerative disc disease of the lumbosacral

spine with spondylosis and aortic thoracic aneurysm and noted plaintiff's prognosis to be "fair."

(*Id.*). Dr. LaRuffa identified abnormal plain films and abnormal echo and cardio tests as

supporting her diagnoses. (Tr. 462). Dr. LaRuffa indicated that plaintiff's symptoms and

functional limitations were reasonably consistent with his physical and emotional impairments.

(*Id.*). Dr. LaRuffa noted that plaintiff's pain, ranging from seven to ten on a ten point scale,

could not be completely relieved with medication without unacceptable side effects. (Tr. 463).

Dr. LaRuffa opined that in an eight-hour day, plaintiff could sit for two hours and stand/walk for

zero to one hour and could not sit continuously in a work setting. (*Id.*). She further opined that

plaintiff needed to get up and move around every fifteen minutes and wait ten minutes before he

could sit down again. (Tr. 464). She opined that plaintiff could not stand/walk continuously in a

work setting. (*Id.*). Dr. LaRuffa opined that plaintiff could frequently lift 0-5 pounds and 5-10

pounds, occasionally lift 10-20 pounds, and never lift over 20 pounds. (*Id.*). She opined that

plaintiff could frequently carry up to ten pounds, occasionally carry 10-20 pounds, and never

carry objects over 20 pounds. (*Id.*). She indicated that arthritis in plaintiff's hands limited repetitive reaching, handling, fingering, and lifting. (*Id.*).

Dr. LaRuffa indicated that plaintiff's symptoms would likely increase in a competitive work environment and his condition would interfere with an ability to keep his neck in a constant position. (Tr. 464-65). She opined that plaintiff could not do a full time competitive job that requires activity on a sustained basis. (Tr. 466). Dr. LaRuffa noted that plaintiff was incapable of tolerating low work stress in light of emotional factors such as agoraphobia, attention deficit disorder, post-traumatic stress disorder, and manic depression/Bipolar I, single manic episode. (Tr. 466). Dr. LaRuffa further opined that plaintiff would need to take ten minute unscheduled breaks at least every one to two hours and would be absent from work as a result of his impairments or treatment more than three times a month. (Tr. 466-67).

Dr. LaRuffa completed an updated disability impairment questionnaire on July 9, 2015 after plaintiff's January 2015 MRI. (Tr. 514-18). She listed plaintiff's diagnoses as hydrocephalus, attention deficit disorder, degeneration of the lumbar disc, hyperlipidemia, hypothyroidism, migraines, and hypertension. (Tr. 514). Dr. LaRuffa stated that her findings were supported by test results in the enclosed medical records. (*Id.*). She opined that in an eight-hour workday, plaintiff could sit for less than one hour and stand for less than one hour. (Tr. 516). Dr. LaRuffa opined that plaintiff needed to move around every fifteen minutes for at least fifteen minutes at a time. (*Id.*). She opined that plaintiff could occasionally lift and carry objects up to ten pounds, but never lift and carry objects over ten pounds. (*Id.*).

Dr. LaRuffa noted that plaintiff's symptoms would likely increase if he were placed in a competitive work environment such that plaintiff would be "unable to work." (Tr. 517). Dr. LaRuffa opined that plaintiff would need to take unscheduled breaks to rest at unpredictable

intervals such that he "should not work." (*Id.*). Dr. LaRuffa estimated that plaintiff would be absent from work more than three times a month. (Tr. 518). Dr. LaRuffa also opined that emotional factors such as hydrocephalus and attention deficit disorder contributed to the severity of plaintiff's symptoms and functional limitations. (*Id.*). Dr. LaRuffa completed another disability impairment questionnaire on September 24, 2015, which documented similar findings as the questionnaire completed on July 9, 2015. (Tr. 578-582). In a narrative report completed on September 24, 2015, Dr. LaRuffa listed plaintiff's diagnoses as: degeneration of the lumbar disc, adult ADHD, migraines, hypothyroidism, hypertension, hyperlipidemia, hydrocephalus, and ganglion cyst of the wrist. (Tr. 584). Dr. LaRuffa again noted that plaintiff was unable to work, specifically because of back spasms that cause decreased range of motion. (*Id.*). Dr. LaRuffa listed plaintiff's prognosis as "fair" and estimated that plaintiff's conditions were expected to last more than 12 months, and most likely expected to last during his lifetime. (*Id.*).

> ii. Paul Skogstrom, M.A., treatment records

Plaintiff commenced treatment with psychologist Paul W. Skogstrom, M.A., in December 2012. (Tr. 331). Mr. Skogstrom's treatment records are not included in the certified administrative record, but he completed a 2013 report at the request of the Social Security Administration and a 2014 mental impairment questionnaire based on treatment between December 2012 and September 4, 2013. (Tr. 331-33, Tr. 494-99).

In a report on September 4, 2013, Mr. Skogstrom diagnosed bipolar disorder with evidence of deficient short term memory. (Tr. 332). Mr. Skogstrom indicated that plaintiff easily gets frustrated, loses his temper, and "has difficulty with tasks involving persistence and directed effort." (*Id.*). Mr. Skogstrom noted that plaintiff completes yard work, but seldom leaves the house. (*Id.*). Mr. Skogstrom opined that as a result of plaintiff's attention deficit

disorder, plaintiff has difficulty maintaining attention and can become dangerously angry if criticized. (*Id.*). Mr. Skogstrom indicated that treatment had not reduced plaintiff's symptoms and prescribed medications had a negative impact. (Tr. 333). Mr. Skogstrom opined that plaintiff has an "extreme inability to tolerate stress." (*Id.*).

In a letter dated November 6, 2014, Mr. Skogstrom noted that the monthly or biweekly sessions of individual cognitive behavioral therapy showed no signs of improvement in plaintiff's condition. (Tr. 494). On November 6, 2014, Mr. Skogstrom also completed a follow-up mental impairment questionnaire where he diagnosed attention deficit disorder (DSM 314.00), developmental reading disorder (DSM 315.00), most recent episode depressed, moderate (DSM 296.52), and intermittent explosive disorder (DSM 312.34). (Tr. 495). Mr. Skogstrom identified plaintiff's signs and symptoms that supported his diagnoses as follows: depressed mood; abnormal affect; hostility or irritability; difficulty thinking or concentrating; easy distractibility; flight of ideas; poor memory; paranoia/suspiciousness; vigilance and scanning; anhedonia; decreased energy; deeply ingrained, maladaptive patterns of behavior; impulsive or damaging behavior; intense and unstable interpersonal relationships; motor tension; pathological dependence, passivity, or aggressiveness; psychomotor abnormalities; and social withdrawal or isolation. (Tr. 496). Mr. Skogstrom opined that plaintiff's attention, concentration, and reading disability are "very severe and constant." (Tr. 497). He also opined that plaintiff's irritability and angry outbursts are constant and severe. (*Id.*). Mr. Skogstrom noted that observation and reports showed that plaintiff has a low I.Q. or reduced intellectual functioning. (*Id.*). Mr. Skogstrom estimated that plaintiff would miss work more than three times per month and would be unable to work. (Tr. 499). Mr. Skogstrom reported:

> This patient has multiple and severe physical and psychological disorders. He is
> unable to work or to relate to people other than his supportive wife. There is

potential for assaultive behavior. Mr. Baker avoids this by social withdrawl [sic]. (*Id.*).

### iii. Consultative examining psychologist's report

On September 21, 2013, Clinical Psychologist Dr. Taylor Groneck, Psy.D., evaluated plaintiff on behalf of the state agency. (Tr. 334). During the psychological evaluation, plaintiff's short-term memory was adequate, but his attention and concentration skills were limited. (Tr. 337). Plaintiff seemed to be easily frustrated and his overall intellectual abilities appeared to fall in the borderline range. (*Id.*). Plaintiff appeared irritable and in pain. (Tr. 336-37). Dr. Groneck diagnosed mood disorder, not otherwise specified and ruled out borderline intellectual functioning. (Tr. 338). Plaintiff's GAF score was 55.[4] Dr. Groneck opined that although plaintiff could understand and follow simple instructions, he may struggle with complex and multi-step tasks due to his limited cognitive abilities. (Tr. 339). She reported that due to his mood symptoms, such as generalized irritability and limited frustration tolerance, he would struggle focusing for prolonged periods of time. (*Id.*). Dr. Groneck opined that "[e]xposure to novel and demanding tasks would likely feel distressing to him and he may give up easily." (*Id.*). Dr. Groneck also found that plaintiff would encounter significant problems functioning in customer service oriented positions and would struggle to maintain productive work relationships with coworkers and supervisors due to his mood problems. (*Id.*). She further stated that plaintiff would have problems coping with minor changes in working conditions and have difficulty problem-solving in the work setting. (*Id.*). Dr. Groneck suggested that

---

[4] The "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Konecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th ed., text rev.2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* A GAF score of 51-60 is indicative of "[m]oderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers)." *Id.* at 34.

"[e]xposure to significant workplace pressures would be expected to increase his symptoms at this time." (*Id.*).

### iv. Non-examining State Consultative Physicians' Reports

Non-examining state agency physician Leslie Green, M.D., reviewed the physical evidence of record on August 5, 2013 and determined that plaintiff had the following exertional limitations: occasional lifting of up to 20 pounds and frequent lifting of up to ten pounds; standing and/or walking with normal breaks for 6 hours in an 8-hour work day and sitting with normal breaks for 6 hours in an 8-hour work day; and unlimited pushing and/or pulling. (Tr. 74). Dr. Green rated plaintiff's postural limitations as follows: occasional climbing ramps/stairs; never climbing ladders/ropes/scaffolds; frequent balancing; occasional stooping; frequent kneeling; occasional crouching; and occasional crawling. (*Id.*)

Non-examining state agency psychologist Carl Tishler, Ph.D., reviewed the mental evidence of record on October 18, 2013 and determined that plaintiff had understanding and memory limitations, including moderate limitations in his ability to understand and remember detailed instructions. (Tr. 75). Dr. Tishler found that plaintiff had sustained concentration and persistence limitations, including moderate limitations in his ability to carry out detailed instructions and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 75-76). Dr. Tishler noted that plaintiff "should not be expected to work at a constant pace and changes in duties should be infrequent and easily explained." (Tr. 76). Dr. Tishler determined that plaintiff had social interaction limitations, including moderate limitations in his ability to interact appropriately with the general public, ability to accept instructions and respond appropriately to criticism from supervisors, and

ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*). Dr. Tishler also opined that plaintiff had adaptation limitations, including moderate limitations in his ability to respond appropriately to changes in the work setting. (*Id.*).

Stephen Sutherland, M.D., a state agency physician, reviewed the physical evidence of record for reconsideration purposes on January 23, 2014. (Tr. 101-03). Dr. Sutherland largely affirmed Dr. Green's assessment, but noted that plaintiff could occasionally climb ladders/ropes/scaffolds and frequently crouch. (Tr. 102). Denise Rabold, Ph.D., M.A., a state agency psychologist, reviewed the mental evidence of record for reconsideration purposes on January 22, 2014. (Tr. 103-05). Dr. Rabold largely affirmed Dr. Tishler's assessment, but added that plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods and markedly limited in his ability to interact with the general public. (Tr. 104).

### b. ALJ's weighing of the opinion evidence

The ALJ gave "great weight" to the reports of the non-examining state agency consultative physicians and psychologists. The ALJ noted that these physicians and psychologists opined that plaintiff was capable of performing a light RFC and had mild to moderate mental limitations, which is "consistent with the medical evidence." (Tr. 24). The ALJ found that "[t]he medical evidence of record as a whole does not show any clinical findings or objective medical evidence to justify greater limitations." (*Id.*).

The ALJ gave "some weight" to the opinion of examining psychologist Dr. Groneck, explaining that "the record shows some mental health treatment, which has been conservative, but many mental status exams were unremarkable as summarized above." (Tr. 21).

The ALJ gave "little weight" to Dr. LaRuffa's July 2015 opinion. (Tr. 20). The ALJ

17

discounted Dr. LaRuffa's opinion on the grounds that her treatment notes and physical examinations did not "justify the extreme limitations with overall conservative treatment." (*Id.*). The ALJ gave no weight to Dr. LaRuffa's opinion that plaintiff was unable to work, noting that it is a "conclusion reserved to the Commissioner." (*Id.*) (citing Social Security Ruling 96-5p, 1996 WL 374183, at *2 (1996)). The ALJ concluded that Dr. LaRuffa's opinion in her September 2015 narrative report was entitled to "little weight due to the conclusory nature of her opinion." (Tr. 21).

The ALJ concluded that Mr. Skogstrom's September 2013 opinion was entitled to "little weight" as "the [plaintiff's] mental health treatment has been conservative and many mental status exams were unremarkable." (Tr. 21). The ALJ also determined that Mr. Skogstrom was not considered an acceptable medical source. (*Id.*). The ALJ concluded that Mr. Skogstrom's November 2014 opinion was entitled to "little weight," noting that Mr. Skogstrom's opinion that plaintiff was unable to work is "a conclusion expressly reserved to the Commissioner and is given no weight." (Tr. 22). The ALJ noted that his opinion was "not in line with conservative treatment or benign mental status examinations." (*Id.*). The ALJ further noted that "[h]is extreme limitations do not comport with the conservative medication management and treatment source findings that the [plaintiff] typically had a normal mood and affect, and was alert and fully oriented." (*Id.*). The ALJ again noted that Mr. Skogstrom is "not considered an acceptable medical source" because he "is a therapist." (*Id.*).

Plaintiff alleges that the ALJ erred by declining to afford controlling weight to the opinions of his treating physicians. (Doc. 7 at 11). Plaintiff argues that the ALJ failed to comply with the applicable rules and regulations in affording Dr. LaRuffa's opinion little weight. (*Id.* at 12). Plaintiff maintains that Dr. LaRuffa's opinions were based on objective medical evidence,

including x-rays and other test results and physical examinations documented in the medical record. (*Id.*). Plaintiff further contends that even if the ALJ did not err by refusing to give Dr. LaRuffa's opinion controlling weight, the ALJ erred in failing to weigh the applicable factors outlined in 20 C.F.R. §§ 404.1527, 416.927. (*Id.* at 15).

Plaintiff contends that Mr. Skogstrom is an acceptable medical source for purposes of the treating physician rule because he is a licensed psychologist. (Doc. 7 at 16) (citing 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2)). Plaintiff argues that the ALJ erred in rejecting Mr. Skogstrom's opinion based on conservative treatment and normal mental health status examinations because the records from Mr. Skogstrom are not included in the record. (*Id.* at 17). Plaintiff maintains that the ALJ had a duty to develop the record and obtain treatment records from Mr. Skogstrom if she felt they were required. (*Id.*). Plaintiff contends that the ALJ erred in affording little weight to Mr. Skogstrom's opinion due to conservative treatment and a lack of hospitalization because "[n]o mental health source in the record recommended more aggressive treatment or found the level of treatment prescribed inconsistent with a finding of disability." (*Id.* at 17-18). Plaintiff further alleges that the ALJ erred in giving great weight to the non-examining consultative physicians and psychologists because they reviewed the record before it was complete. Plaintiff contends that these physicians and psychologists therefore did not consider medical evidence after December 2013, such as the November 2014 report from Mr. Skogstrom and critical MRI evidence and opinions from Dr. LaRuffa. (*Id.* at 15, 18).

In response, the Commissioner contends that plaintiff's argument lacks merit and is "nothing more than a disagreement with how the ALJ decided to weigh differing medical opinions." (Doc. 10 at 4). The Commissioner contends that the ALJ properly explained why she afforded little weight to the treating source opinions and was not required to articulate a factor-

by-factor analysis when weighing the opinions. (*Id.* at 5). The Commissioner maintains that the ALJ properly rejected Dr. LaRuffa's statement that plaintiff was unable to work because such a determination is "reserved for the Commissioner." (*Id.* at 7) (quoting Social Security Ruling 96-5p, 1996 WL 374183, at *2 (1996)). The Commissioner argues that the ALJ properly weighed the remainder of Dr. LaRuffa's assessments as they were "not consistent with the medical evidence as a whole." (*Id.* at 8) (quoting 20 C.F.R. § 404.1527(c)(4)). The Commissioner argues that Dr. LaRuffa failed to properly explain the restrictions that she imposed in her disability impairment questionnaires. (*Id.* at 9-10). The Commissioner further argues that there were significant internal inconsistencies among Dr. LaRuffa's assessments. (*Id.* at 10).

The Commissioner responds that the ALJ properly gave little weight to the assessment of Mr. Skogstrom because he "never provided treatment records to verify his opinions or corroborate his claims." (*Id.* at 12). The Commissioner maintains that the missing treatment notes negated the ALJ's ability to conduct a proper treating source analysis and weigh the five factors listed in 20 C.F.R. §§ 404.1527 and 416.927. (*Id.*). The Commissioner contends that the ALJ "more than adequately explained why Mr. Skogstrom's assessment was inconsistent with the medical evidence as a whole" by citing to many instances where plaintiff's mental status exams were unremarkable and where he reported he felt better with mental health related medication. (*Id.* at 13). The Commissioner argues that the ALJ was under no duty to recontact Mr. Skogstrom to obtain his treatment notes and was under no heightened duty to develop the record any further as plaintiff was represented by counsel. (*Id.* at 14-15).

The Commissioner contends that the ALJ properly weighed the opinions of state agency reviewing physicians and psychologists and appropriately adopted these findings into the RFC in their entirety. (*Id.* at 16-17). The Commissioner argues that although the state agency reviewing

physicians and psychologist did not have access to the entire record at the time they authored their opinions, the ALJ took into account the more recent evidence when issuing her decision. (*Id.* at 18).

The Court finds that the ALJ failed to properly weigh the opinions of Dr. LaRuffa and failed to give good reasons as to why her opinion was entitled to only "little weight." The Court acknowledges that whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion that her patient is disabled is not "giv[en] any special significance." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). However, the Sixth Circuit requires that "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Wilson*, 378 F.3d at 544 (citing Social Security Ruling 96-2p, 1996 WL 374188, at *5 (1996)). Although the ALJ was not required to accept Dr. LaRuffa's conclusion that plaintiff is unable to work, the ALJ was required to fully articulate her reasons for giving only little weight to plaintiff's treating physicians.

The ALJ summarized portions of the medical record prior to weighing Dr. LaRuffa's opinion; however, the Court is unable to discern the evidentiary basis for the ALJ's decision to discount Dr. LaRuffa's opinion because the ALJ's short analysis provides no clue as to the evidence she relied on for her conclusion. The ALJ declined to give Dr. LaRuffa's opinion controlling weight because "her own treatment notes and physical exams do not justify these extreme limitations with overall conservative treatment." (Tr. 20). The ALJ also declined to give Dr. LaRuffa's opinion controlling weight because it was "conclusory." (Tr. 21). The ALJ

failed to explain or reference the treatment notes, physical examinations, or other record evidence which purportedly supports her conclusion that Dr. LaRuffa's opinion is unjustified. The ALJ also failed to explain why Dr. LaRuffa's opinion is "conclusory." *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and explain why it is the treating physician's conclusion that gets the short end of the stick."). The ALJ's reasons for discounting Dr. LaRuffa's opinion are impossible to discern from her brief statements that Dr. LaRuffa's opinion is conclusory and not supported by her clinical findings and thus fail to satisfy the "good reasons" requirement for evaluating the treating physician's opinions. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); *Wilson*, 378 F.3d at 544. The ALJ's failure to adequately articulate the reasons for the weight given to Dr. LaRuffa's opinion denotes a lack of substantial evidence. *Blakley*, 581 F.3d at 407.

The ALJ's analysis also falls short of meeting the procedural requirements for evaluating a treating physician's opinion. Where, as here, an ALJ declines to give controlling weight to the opinion of a treating physician, the ALJ must nevertheless balance certain regulatory factors in assessing the weight to give that opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Here, the ALJ made no attempt to apply the above regulatory factors. The ALJ did not discuss Dr. LaRuffa's long-standing treatment history with plaintiff dating back to November 2012,[5] nor did the ALJ discuss the frequency of her examinations of plaintiff, the nature and extent of her treatment relationship, the supportability of her opinion, or the consistency of her opinion with the record as a whole. *See id. See also Gayheart*, 710 F.3d at 376; *Wilson*, 378

---

[5] Plaintiff indicates that his treatment history with Dr. LaRuffa dates back to January 2013; however, the record reflects that treatment began as early as November 2012. (*See* Tr. 514, Tr. 578).

F.3d at 544. Although the Commissioner contends that there were "significant internal inconsistencies among Dr. LaRaffa's [sic] assessments," including inconsistencies in Dr. LaRuffa's April 2014 and July 2015 assessments regarding plaintiff's ability to engage in fine manipulation and grasp, turn, and twist objects bilaterally, this was a determination for the ALJ to make in assessing the weight to assign Dr. LaRuffa's opinion. The Commissioner's post hoc rationalizations for the ALJ's actions cannot supplant the ALJ's omission in this case. *Blakley*, 581 F.3d at 407. In the absence of any explanation of the "reasons" given by the ALJ for her decision to give little weight to the opinion of Dr. LaRuffa, the Court is unable to meaningfully review the ALJ's decision or conclude that the ALJ gave "good reasons" for the weight assigned to the treating physician's opinion.

The Court cannot say that the opinion of Dr. LaRuffa is "so patently deficient that the Commissioner could not possibly credit" it and therefore excuse the ALJ's failure to conduct a meaningful review in this case. *Wilson*, 378 F.3d at 546-47. Dr. LaRuffa had a long-standing treatment relationship with plaintiff and prescribed several treatment modalities in an effort to treat plaintiff's conditions, including medications and referrals to pain management and an orthopedic physician. In her September 2015 narrative report, Dr. LaRuffa cited plaintiff's laboratory and MRI results and plaintiff's "symptoms as expressed during examinations" as the medical basis supporting plaintiff's diagnoses and limitations. (Tr. 584). Clinical findings included positive straight leg raises and tenderness to the sacroiliac joint (Tr. 301), back spasms (Tr. 299, 296, 414, 478, 548, 541, 537, 527), tenderness on palpation of the lumbosacral spine (Tr. 296), reduced range of motion (Tr. 296, 548, 537, 527), irregular gait (Tr. 417), limited ambulation (Tr. 417, 478, 542, 541, 537, 566), decreased sensation in the left foot and great toe (Tr. 417), tender boggy olecranon bursa of the left elbow (Tr. 484, 481), and ganglion cyst of the

left wrist (Tr. 566). An x-ray conducted on June 10, 2013, revealed multi-level thoracic and lumbosacral junction spondylosis. (Tr. 310). An MRI taken on January 22, 2015 revealed multi-level disc bulging with hypertrophic facet arthritis and facet changes, and degenerative changes. (Tr. 550). In light of Dr. LaRuffa's long-standing treatment relationship with plaintiff, along with the objective and clinical findings of record, the Court cannot say that the Commissioner "could not possibly" credit the opinion of Dr. LaRuffa. Because the ALJ failed to give good reasons for giving the treating physician's opinion "little weight" and adequately consider the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c), the ALJ's rejection of Dr. LaRuffa's opinion is not supported by substantial evidence.

However, the ALJ's rejection of Mr. Skogstrom's opinion is supported by substantial evidence. As an initial matter, the ALJ incorrectly determined that Mr. Skogstrom was not considered an acceptable medical source. Licensed physicians and licensed or certified psychologists are "acceptable medical sources." Social Security Ruling 06-03p, 2006 WL 2329939, at *1-2 (2006) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a)). Only "acceptable medical sources" as defined under 20 C.F.R. §§ 404.1513(a) and 416.913(a) can provide evidence establishing the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. *Id.* at *2. Plaintiff correctly notes that Mr. Skogstrom, as a licensed psychologist in Ohio, is an acceptable medical source under the regulations.[6] Therefore, the Court should apply the treating source rule to the ALJ's analysis of Mr. Skogstrom's opinion.

---

[6] *See* License Look-Up,
*https://elicense.ohio.gov/oh_verifylicense?firstName=Paul&lastName=Skogstrom&licenseNumber=&searchType=individual* (last visited Dec. 28, 2017). Licenses are public records subject to judicial notice under Fed. R. Evid. 201. Public records and government documents are generally considered "not to be subject to reasonable dispute," including "public records and government documents available from reliable sources on the Internet." *U.S. ex. Rel Dingle v. BioPort Corp.*, 270 F. Supp.2d 968, 972 (E.D. Mich. 2003) (citations omitted).

An ALJ must give controlling weight to a treating physician's opinion insofar as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with other substantive evidence in [the] case record." *Gayheart*, 710 F.3d at 376. The ALJ reasonably concluded that Mr. Skogstrom's opinion was not well-supported by the evidence of record because Mr. Skogstrom's own clinical notes and observations were not included in the administrative record. Although plaintiff contends that the ALJ had a duty to more fully develop the record and obtain records from Mr. Skogstrom, there is no heightened duty for an ALJ to develop the record where, as here, a claimant is represented by counsel at the administrative hearing. *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). In this case, plaintiff was represented by counsel during the ALJ hearing and bore the ultimate responsibility of proving the existence of a disability and producing the medical evidence necessary to substantiate his claim. *See Hackle v. Colvin*, No. 1:12-cv-145, 2013 WL 1412189, at *10-11 (S.D. Ohio April 8, 2013) (Beckwith, J.).

In addition, the ALJ gave good reasons for rejecting Mr. Skogstrom's opinion. The ALJ reasonably noted that Mr. Skogstrom's assessment was inconsistent with the mental health evidence of record, including Dr. LaRuffa's mental status examinations, which showed plaintiff functioned within normal limits. (Tr. 22-23). Several of Dr. LaRuffa's examinations, including many after Mr. Skogstrom's November 2014 mental impairment questionnaire, revealed that plaintiff had a normal mood and affect, exhibited no distress, and was well-oriented with normal memory. (*See* Tr. 306, 301, 299, 541, 533, 530, 527, 566). In May 2015, plaintiff reported that he "fe[lt] fine and [could] focus better since back on the Adderall." (Tr. 530). This objective medical evidence is inconsistent with Mr. Skogstrom's opinion that plaintiff had a "depressed mood, abnormal affect, hostility or irritability, and poor memory." (Tr. 496). Although the ALJ

did not expressly balance the factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6), other than discussing the inconsistencies of Mr. Skogstrom's opinion with the objective evidence, the ALJ's failure to conduct this analysis is harmless error. Substantial evidence supports the conclusion that Mr. Skogstrom's opinion is so patently deficient as to not be credible because, as explained above, it is inconsistent with the objective evidence of record and unsupported by any treatment records from Mr. Skogstrom. *Wilson*, 378 F.3d at 546-47.

For the above reasons, plaintiff's first assignment of error should be sustained as to the weight afforded to Dr. LaRuffa's opinion, but overruled as to Mr. Skogstrom's opinion.

## 2. The Court need not reach plaintiff's remaining assignment of error.

It is not necessary to address plaintiff's remaining assignment of error that the ALJ failed to properly evaluate plaintiff's credibility. Because this case should be remanded for the ALJ to reconsider and reweigh Dr. LaRuffa's opinions, this may impact the remainder of the ALJ's analysis, including plaintiff's credibility. In any event, even if this assignment of error has merit, the result would be the same, i.e., remand for further proceedings and not outright reversal for benefits. *See Mays v. Comm'r of Soc. Sec.*, No. 1:14-cv-647, 2015 WL 4755203, at *13 (S.D. Ohio Aug. 11, 2015) (Report and Recommendation) (Litkovitz, M.J.), *adopted*, 2015 WL 5162479 (S.D. Ohio Sept. 3, 2015) (Dlott, J.).

## III. This matter should be reversed and remanded for further proceedings.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not been resolved in this matter. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be reversed and remanded for further proceedings with instructions to the ALJ to re-weigh the medical opinion evidence in accordance with this decision; to reassess plaintiff's

RFC, giving appropriate weight to the opinion of Dr. LaRuffa, including an explanation on the record for the weight afforded to her opinion; to reassess plaintiff's credibility; and for further medical and vocational evidence as warranted.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Date: 1/3/18

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LAWRENCE D. BAKER, SR.       Case No. 1:16-cv-1142
   Plaintiff,           Dlott, J.
                   Litkovitz, M.J.

   vs.

COMMISSIONER OF
SOCIAL SECURITY,
   Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).